Ryan A. Hamilton
NEVADA BAR NO. 11587
HAMILTON LAW
5125 S. Durango Dr., Ste. C
Las Vegas, NV 89113
(702) 818-1818
(702) 974-1139
E-Mail: Ryan@hamlegal.com
*Attorneys for the Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

RONALD MCCLURE, an Arizona Citizen; and
JASON MCCLURE, an Arizona Citizen,

        Plaintiffs,

  vs.

NARCONON FRESH START d/b/a RAINBOW
CANYON RETREAT, a California Corporation;
ASSOCIATION FOR BETTER LIVING AND
EDUCATION INTERNATIONAL;
NARCONON INTERNATIONAL; and DOES
1-100, ROE Corporations I – X, inclusive,

        Defendants.

Case No.:2:14-CV-00995-JCM-CWH

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

      There is a serious disconnect between what Narconon Fresh Start ("Fresh

Start") represented to Plaintiff Ronald McClure ("Ronald") about its drug

rehabilitation program and what Fresh Start's program actually entails. Ronald

informed Fresh Start he was seeking a drug rehabilitation program for his son,

Plaintiff Jason McClure, that provided counseling, on-site 24-hour medical

personnel, and did not involve religion in any way. Fresh Start intake specialist, Dan

1

Carmichael, expressly represented to Ronald that Fresh Start's drug rehab met each of these requirements.

Unfortunately, this was false. First, by design, the standardized treatment program Fresh Start offers, the Narconon program, does not involve counseling. ██ ███████████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████ In discovery responses, Fresh Start has conceded that it does not provide counseling under the traditional definition of that term. Jason McClure did not receive the promised counseling at Fresh Start.

Second, despite Fresh Start's representation to Ronald that it had on-site 24-hour medical personnel, Fresh Start does not have any on-site medical personnel. Fresh Start does not dispute this. Instead, in its Motion for Summary Judgment (hereafter "Motion"), Fresh Start mischaracterizes Plaintiffs' testimony and argues that because doctors were available to Jason off-site, it is entitled to summary judgment. Fresh Start's argument is unavailing and its Motion should be denied.

Third, contrary to Fresh Start's representation that its program did not involve religion, Fresh Start's rehabilitation program is comprised of scriptures from the Scientology religion. Fresh Start's use of the standardized program is overseen by members of Scientology's religious order working for the Association for Better Living and Education International ("ABLE"). Fresh Start is modeled administratively after Scientology churches. And, Fresh Start has received

recognition for getting thousands of beings into Scientology and for introducing the world to the founder of the Scientology religion, L. Ron Hubbard.

In making these misrepresentations, Fresh Start deprived Ronald of the ability to make a fully-informed decision about where to send his son for drug rehabilitation. Ronald had good reason for seeking these characteristics in a drug rehab program for his son. He believed they would provide Jason with the greatest chance of success at rehabilitation.

Based on Fresh Start's misrepresentations, Ronald paid $33,000.00 to Fresh Start for Jason to attend its drug rehabilitation. Jason left the Fresh Start program early and relapsed. Jason began injecting cocaine with two women he met at Fresh Start, one of whom worked at Fresh Start as an intern.

There are triable issues of fact as to Fresh Start's representations to Ron about its drug rehabilitation program. The Court should deny Fresh Start's Motion as to Plaintiffs' claims for breach of contract, fraud, negligent misrepresentation, and deceptive trade practices.[1]

## II.   STATEMENT OF DISPUTED MATERIAL FACTS

### A.   Fresh Start's representations to Ronald McClure

1.   Plaintiff Jason McClure is a successful businessman, operating a number of businesses with his father, Plaintiff Ronald McClure.

---

[1] Plaintiffs abandon their remaining claims of negligence, negligence per se, RICO, intentional infliction of emotional distress, civil conspiracy, and breach of implied covenant of good faith and fair dealing.

2.     Jason has been addicted to cocaine for over ten years. His addiction has taken a tremendous toll on his personal life and has made it more difficult for Jason to play an active in managing his businesses. (Defendant's Ex. K at 109).

3.      Candy Shipley, Ron's daughter and Jason's sister, began seeking a drug rehabilitation program for her Jason in early 2012. (Plaintiffs' Ex. A, Declaration of Candy Shipley).

4.     Ms. Shipley began speaking with Fresh Start intake specialist Dan Carmichael in early 2012 about Jason attending drug rehab at Fresh Start. (*Id*.)

5.     Ms. Shipley "asked Dan [Carmichael] very specific questions about the center [Fresh Start] because [she] knew it was something she was going to have to convince her entire family of. [She] wanted to make sure the establishment was NOT religious based and he assured [her] it was NOT." (*Id*.) (emphases in original).

6.     Mr. Carmichael continued to attempt to make contact with Ms. Shipley for most of 2012. (*Id*.)

7.     Ms. Shipley set up a phone call with her parents, Ronald and Linda McClure to speak with Mr. Carmichael about Jason attending drug rehabilitation at Fresh Start. (*Id*.)

8.      On or about May 19, 2013, Ronald and Linda McClure spoke with Carmichael about their son attending rehab at Fresh Start.

9.     In finding an appropriate rehab for his son, it was important to Ronald that the rehab: (1) was not a 12-step program; (2) did not have anything to do with religion;

4

(3) had on-site 24-hour medical personnel; (4) provided counseling; and (5) was not in Arizona. (Defendant's Ex. L at 122-3).

10.     At his deposition in this case, Ronald testified as to the representations Carmichael made to him that sold him on sending Jason to Fresh Start:

Q.     Okay. Is there anything specifically that Dan [Carmichael] told you that sold you on the program?

MR. HAMILTON: Objection. Asked and answered. You can answer.

THE WITNESS: It was on a speaker phone, in other words, where me and my wife could speak at the same time and hear at the same time. We asked Dan questions about the facility. We asked if there were activities. He said, yeah, there was lots of activities. Horseback riding, horseshoes, hiking, swimming, all kinds of stuff. Ping pong, pool, which we weren't too concerned about.

We asked him if there was a medical doctor or nurse on the facility at all times. He said yes, we have a 24-hour medical person here at all times.  We asked him, we were really concerned about the counseling because Jason does listen to you, or listen to professional people, and he said yes, but he says he has to go through detoxification. When he gets out of that, then we get into the sauna. And during the sauna or after the sauna, we have professional counselors that are here and they will counsel him.

And my wife asked him about the religion and he said no, no,  no, this is not religion. This is – she said what about 12-step? Because he doesn't want either one

of those. He says no. He says there's maybe a couple things we would pull out of 12 steps, which you just have to have, but not the 12-step. No, we don't do that. It's not religious affiliated in any way, shape, or form. …

(Id.)

11.     Based on Mr. Carmichael's representations, Ron paid Fresh Start $33,000.00 for Jason to attend drug rehabilitation there. After an intervention, Jason traveled from Arizona to attend Fresh Start's facility near Caliente, Nevada, on or about May 21, 2013.

12.     On or about May 23, 2013, once Jason was at the Fresh Start facility near Caliente, Nevada, Fresh Start had Jason sign a number of intake documents. Among these documents was a "Disclosure Form" that provided, in relevant part: "The Drug Rehabilitation technology used by the Narconon Program is based on the works of L. Ron Hubbard, founder of the Scientology religion. The Narconon program is secular (non-religious) in nature and the program does not include participation in any religious studies of any kind, Scientology or otherwise." (Defendant's Ex. D at FSM0036).

13.     Fresh Start uses the "Narconon program" to administer drug rehabilitation. The Narconon program is a standardized program whereby each person undergoing the program receives the same written materials.

14.     L. Ron Hubbard, the founder of the Scientology religion, is named as the author of the Narconon program and all manuals Narconon uses to train staff to administer the program.

███ ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

17.     ABLE is the holder of the copyrights and trademarks for the Narconon program. ABLE licenses the copyrights and trademarks for the Narconon program and all manuals to Narconon International. Narconon International, in turn, sublicenses the Narconon program and all manuals to Fresh Start pursuant to a licensing agreement. (Plaintiffs' Ex. C, Licensing Agreement).

███ ████████████████████████████████████████████████████████

████████████████████████████████████████████

19.     Under a licensing agreement, ABLE has the right conduct inspections at Narconon Fresh Start. These inspections entail ABLE monitoring and correcting the manner in which Narconon Fresh Start delivers the Narconon treatment program to patients at Fresh Start. (Plaintiffs' Ex. B at 131:4 – 132:6).

20.     According to a former Executive in the Narconon network, Eric Tenorio,
Narconon facilities are "modeled administratively after Scientology churches using
Hubbard Communication Office Policy Letters (HCOPLs)." (Plaintiffs' Ex. D,
Affidavit of Eric Tenorio, ¶ 6.)

21.     Each piece of the Narconon program is found in scriptures from the
Scientology religion, known as Hubbard Communications Office Bulletins
(HCOBs). *Id*. at ¶ 6.

22.     Patients who "graduate" from the Narconon program are sometimes asked to
intern at a Narconon center and then may become full staff members at the facility.
Students who stay on as counselors or staff are trained with Scientology scriptures,
HCOBs and HCOPLs. (Plaintiffs' Ex. D, at ¶ 24.) These "graduates" are "being
indoctrinated into Scientology teachings and being groomed to become
Scientologists." *Id*.

23.     Narconon's connection to the Scientology religion "was a constant
complaint" by students. (Plaintiffs' Ex. E at 198:25 – 199:15, Excerpts of
Deposition of Hayley Matthews).

(Plaintiffs' Ex. F, Narconon Manual, Basic Staff Hat, at 21).

25.     In answer to Interrogatories, Fresh Start has responded, "Fresh Start does not provide 'counseling' or 'treatment' per se under the traditional definitions of those descriptions." *See* (Plaintiffs' Ex. G, Fresh Start's Answer to Interrogatory No. 14, *Welch v. Narconon Fresh Start et al.*, 2:14-cv-00167-JCM-CWH (D. Nev.)).

26.     Jason testified in his deposition that he benefitted from therapist sessions he received at a drug rehab he attended after Narconon. He contrasted the therapist sessions as talking about all the "stuff you don't talk about Narconon." (Defendant's Ex. K at 372:23 – 373:17).

27.     Fresh Start does not have medical personnel on-site at its centers, such as its center near Caliente, Nevada. Motion at 17:23 – 28. Jason McClure, however, was seen by a doctor before beginning the Narconon program.

28.     ABLE awarded a plaque to Fresh Start that provides, in relevant part:

[Fresh Start Executive Director Larry Trahant] and his dynamic team at Narconon Fresh Start are hereby warmly thanked and highly commended for their dedication and hard work. They give us tremendous back up in introducing LRH to the world and are saving lives on a daily basis. There are thousands of beings who have taken their first steps on The Bridge, thanks to the compassion and efforts of this team. (Plaintiffs' Ex. H, Plaque).

30.     Daniel Morgan worked for Narconon Fresh Start for ten years as a web developer. For the first nine-and-a-half years, Mr. Morgan worked remotely from Idaho. When Mr. Morgan moved to California to work on-site to work at Fresh Start's corporate offices, he left his job at Fresh Start "[b]ecause of continued pressure on me to become a Scientologist." (Plaintiffs' Ex. J, Excerpts of Daniel Morgan Deposition, at 91:11-13).

31.     Jason McClure voluntarily left Fresh Start on or about July 8, 2013.

32.     He relapsed thirty-seven days after leaving Fresh Start when he started injecting cocaine with two women he met at Fresh Start, one of whom worked there as an intern. (Defendant's Ex. K at 458:4 – 8, 440:13 – 18).

## III.    ARGUMENT

### A. Legal standard

"Summary judgment is appropriate only if, taking the evidence all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to

judgment as a matter of law." *Furnace v. Sullivan*, 705 F. 3d 1021, 1026 (9th Cir. 2013). The moving party satisfies its burden by "pointing out there is an absence of evidence to support the non-moving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Once the moving party does this, the burden shifts to the non-moving party to raise a genuine issue for trial. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

The same evidence creates triable issues of fact concerning Plaintiffs' claims for breach of contract, fraud, negligent misrepresentation, and deceptive trade practices. In relevant part, Fresh Start represented to Ron that its drug rehab (a) had on-site 24-hour medical personnel, (b) would provide Jason with counseling, and (c) did not involve religion. Each of these statements was knowingly false.

**B. Lack of Counseling**

Although in its Motion Fresh Start asserts that it did provide counseling to Jason, Fresh Start has conceded in discovery that "Fresh Start does not provide 'counseling' or 'treatment' per se under the traditional definitions of those descriptions." See Exhibit 1 Fresh Start's Answer to Interrogatory No. 14, *Welch v. Narconon Fresh Start et al.*, 2:14-cv-00167-JCM-CWH (D. Nev.). ████████

██████████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████
██████████████████████████████
██████████████████████████████

███████████████████████████████████

*See* Plaintiffs' Ex. F, Narconon Manual, Basic Staff Hat, at 29. Narconon staff are not supposed to go beyond the program's written materials and mix other treatment approaches such as counseling. Fresh Start has admitted in discovery that it administers the Narconon program as written.

In its Motion, however, Fresh Start asserts that its staff member Sean Griffin did, in fact, provide Jason with counseling. Motion at 17:11 – 20. Fresh Start argues that Jason "interacted with Mr. Griffin, a certified drug counselor, about the issues underlying his drug use." *Id*. Apparently, since Fresh Start has conceded in its interrogatory answers that it does not provide counseling, Fresh Start couches its argument that Jason received counseling because he "interacted" with a counselor.

In any case, Fresh Start's assertions in its Motion that it provided Jason McClure counseling are contradicted by Fresh Start's own manuals on how to administer the Narconon program, Fresh Start's answers in discovery, and Jason McClure's testimony.  In his deposition, Jason complained that he did not receive counseling at Fresh Start:

Q.     Okay.  What other things do you think you were numbing yourself from in that –

A.     Well, it's all the stuff that you don't talk about in Narconon [Fresh Start] that you did talk about in HIR [a subsequent rehab facility] which is why the therapist sessions worked for me.

12

(Defendant's Ex. K at 372:23 – 373:17).

## C. 24-hour on-site medical professionals

Fresh Start represented to Ronald McClure that "we have a 24-hour medical person [at the facility] at all times." (Defendant's Ex. L at 122-3). Fresh Start does not have any medical personnel on-site, let alone medical personnel present at the facility at all times. In making this representation, Fresh Start surely knew whether or not its own facilities have medical personnel on-site.

In its Motion, Fresh Start mischaracterize Plaintiff Ronald McClure's testimony as being that Fresh Start merely represented to him that "medical care would be available to Jason McClure, if necessary." Motion at 17. But Ronald testified that he was concerned with Jason having *on-site* medical personnel and that Fresh Start expressly represented they had *on-site* medical care.

Of course, there is a significant difference between a drug rehabilitation facility staffed with medical personnel and one that is not. A facility with on-site medical care is a higher level of care, especially in the case of emergencies. For persons recovering from drug addiction, immediate access to emergency medical services is understandably very important.

Although Fresh Start may have taken Jason McClure to a doctor outside the premises of its facility, that is not what Ronald was promised nor what he paid for.

///

///

13

### D. The Narconon program and religion

It was important to Plaintiffs that the drug rehabilitation program for Jason McClure did not involve religion. Candy Shipley, Jason's sister, began speaking with Dan Carmichael in early 2012 about Jason attending Fresh Start. (Plaintiffs' Ex. A). Ms. Shipley "wanted to make sure [Fresh Start] was NOT religious based and [Carmichael] assured [her] it was NOT." (*Id*.)

Ronald testified that Fresh Start intake specialist Dan Carmichael represented to him that drug rehab at Fresh Start was not religious and was "not religious [sic] affiliated in any way, shape or form:"

And my wife asked him about the religion and he said no, no, no, this is not religion. This is – she said what about 12-step? Because he doesn't want either one of those. He says no. He says there's maybe a couple things we would pull out of 12 steps, which you just have to have, but not the 12-step. No, we don't do that. It's not religious affiliated in any way, shape, or form. …

(Defendant's Ex. L at 122-3).

But contrary to Fresh Start's representation to Ronald, the Narconon program's connections to the Scientology religion are overwhelming. The Narconon program is comprised of scriptures from the Scientology religion. (Plaintiffs' Ex. D, Affidavit of Eric Tenorio, ¶ 6.) Narconon facilities are "modeled administratively after Scientology churches using Hubbard Communication Office Policy Letters (HCOPLs)." *Id*. L. Ron Hubbard, the founder of the Scientology religion, is the

author of all books in the Narconon program and all manuals used to administer the program.

ABLE supervises Fresh Start's use of the Narconon program and its trademarks. (Plaintiffs' Ex. B at 131:4 – 132:6). ABLE also develops the Narconon materials. *Id*. ABLE is made up of members of the Scientology clergy known as the Sea Organization or "Sea Org." *Id*. at 313:14 – 314:24).

Fresh Start's own witness, former employee Hayley Matthews, testified that Narconon's connection to the Scientology religion "was a constant complaint" by patients in the facility. Plaintiffs' Ex. E, Hayley Matthews Deposition, 198:25 – 199:15. Ms. Mathews testified that Narconon and Scientology "do the same thing." *See* pages 283-4.

In a related vein, Dan Morgan worked as a web developer for Fresh Start for ten years. Mr. Morgan worked remotely from Idaho for the first nine-and-a-half years before moving to Glendale, California to work on-site at Fresh Start's corporate office. Mr. Morgan testified that he left his job at Fresh Start "[b]ecause of continued pressure on me to become a Scientologist." Morgan Deposition, 91:11-13.

In addition, Plaintiffs have adduced evidence that Fresh Start has been thanked for introducing persons to Scientology and for introducing the world to L. Ron Hubbard. ABLE presented Fresh Start a plaque that provided, in relevant part:

> Larry [Trahant, Executive Director of Fresh Start] and his dynamic team at Narconon Fresh Start are hereby warmly thanked and highly commended for their dedication and hard work. They give us tremendous back up in

15

introducing LRH to the world and are saving lives on a daily basis. There are thousands of beings who have taken their first steps on The Bridge, thanks to the compassion and efforts of this team.

Plaintiffs' Ex. H. ███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

    Fresh Start places principal reliance on *Sedlock v. Baird*, 235 Cal. App. 4th 874, 878, 185 Cal. Rptr. 3d 739, 742 (Cal.Ct. App.  2015), to argue that its program is secular. In *Sedlock*, the court concluded that a reasonable observer would not view the school district's yoga program as advancing or inhibiting religion. In contrast to the yoga program in *Sedlock*, however, here a reasonable fact-finder could find that Fresh Start uses the Narconon program to advance the Scientology religion. Fresh Start has been thanked for "introducing [L. Ron Hubbard] to the world" and for getting "thousands of beings on The Bridge." In this vein, Eric Tenorio attests that patients who "graduate" from the Narconon program are sometimes asked to intern at a Narconon center and then may become full staff

members at the facility. Further, students who stay on as counselors or staff are trained with Scientology scriptures, HCOBs and HCOPLs. Plaintiffs' Ex. D, Tenorio Affidavit, ¶ 24. These "graduates" are "being indoctrinated into Scientology teachings and being groomed to become Scientologists." *Id.*

Fresh Start is quick to point out that Jason McClure did not know the tenets of Scientology at his deposition. But Jason did not complete the Narconon program and then stay on as a counselor. That is where Mr. Tenorio attested that graduates are indoctrinated to become Scientologists and are groomed to become Scientologists.

Further, even if Jason did not know the specifics of Scientology at his deposition, that does not mean Jason did not feel deceived by Narconon's extensive connections to the Scientology religion after being assured Fresh Start was not religiously affiliated. Such a breach of trust was not helpful to Jason's recovery.

Finally, Fresh Start argues that Plaintiffs are required to offer expert testimony to show that the Narconon program is religious. The only thing Fresh Start offers in support of this proposition is an objection the undersigned made during a deposition in a different case. Motion at 14:22 – 25. Of course, the undersigned's deposition objection is not precedent. More importantly, Plaintiffs have adduced substantial evidence from the testimony of Fresh Start employees, from former employees, and from Fresh Start's own documents that show the program has religious motivations.

In sum, Plaintiffs have adduced substantial evidence that Fresh Start uses the Narconon program to advance the Scientology religion. Fresh Start has received recognition for doing so from ABLE, a group comprised of Scientology clergy. Plaintiffs paid $33,000.00 based on Fresh Start's false representation that it was "not religious[ly] affiliated in any way, shape, or form." For these reasons, there is a triable issue of fact and the Court should deny Fresh Start's Motion.

## E. Fraud

To prevail on claim for fraud under Nevada law, a plaintiff must allege that a defendant (1) made a false representation; (2) knew or believed that the representation was false or had an insufficient basis for making the representation; (3) intended to induce plaintiff to act based upon the misrepresentation; (4) obtained the plaintiff's justifiable reliance upon defendant's misrepresentation; and (5) the plaintiff sustained damages as a result of justifiable reliance upon the misrepresentation. *Bartmettler v. Reno Air, Inc*., 114 Nev. 441, 446, 956 P.2d 1382, 1386 (1998); *Daou v. Abelson*, 2014 WL 939086 at *4 (D. Nev. Mar. 10, 2014).

Plaintiffs survive summary judgment on their fraud claim with respect to Fresh Start's representations as to counseling, 24-hour on-site medical personnel, and its lack of religious affiliation. Dan Carmichael made these false representations to Ron in a phone call with Ron and his wife. As set forth above, the drug rehab program at Fresh Start – the Narconon program – does not contain counseling, does not have on-site medical personnel, and has extensive connections to the

18

Scientology religion. Given that the representations related to basic characteristics of the rehab program at Fresh Start, Carmichael surely knew these representations to be false or had an insufficient basis for making the representation. Carmichael made these representations in selling the program to Ronald and testified that these representations were what "sold" him on Fresh Start's program. Finally, Ronald paid $33,000.00 to Fresh Start based on these false representations.

## F.  Negligent Misrepresentation

To prove a claim for negligent misrepresentation under Nevada law, a plaintiff must show that a defendant (1) acting in the course of his profession or employment, (2) supplied false information for the guidance of others; (3) may be liable for the plaintiff's losses based on; (4) the plaintiff's justifiable reliance on the information, because (5) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 449, 956 P.2d 1382, 1387 (Nev. 1998).

There are genuine issues of material fact with respect to at least three misrepresentations that Fresh Start made to Ronald McClure. Ronald McClure testified (1) that Dan Carmichael, acting in the course of his employment for Fresh Start; (2) supplied Ronald with false information that Narconon would provide Jason McClure counseling, that Fresh Start had 24-hour medical personnel *at the facility*, and that the Fresh Start program was not connected to religion in any way.

As Fresh Start points out in its Motion, Ronald chose to send Jason to Fresh

Start based on these representations. Motion at 13. Finally, there is evidence that, at a minimum, Mr. Carmichael failed to use reasonable care in making these misrepresentations to Ronald. Indeed, it was important to Ronald that there be 24-hour medical supervision *at the facility* and Mr. Carmichael incorrectly stated there was. Similarly, Mr. Carmichael incorrectly represented to Ronald that Fresh Start provided counseling and was in no way affiliated with religion.

Fresh Start cites *Copper Sands Homeowners Ass'n, Inc. v. Copper Sands Realty, LLC*, No. 2:10-CV-00510-GMN, 2013 WL 3270430, at *8 (D. Nev. June 26, 2013), as support for its argument that Plaintiffs' claim for negligent misrepresentation fails. That case is inapposite. In *Copper Sands*, the plaintiffs had no recollection of conversations with defendants or their agents. *Id*. Because the plaintiffs in *Copper Sands* could not even recall the alleged false representations, the court granted the defendants' motion for summary judgment on the claim.

Here, in contrast to *Copper Sands*, Ronald McClure testified as to the specific false representations Mr. Carmichael made to him in selling Ronald the program at Fresh Start.

For these reasons, there are triable issues of fact on Plaintiffs' claim of negligent misrepresentation.

### G. Breach of contract

To prove a claim of breach of contract under Nevada law requires (1) the existence of a valid contract (2) the defendant's breach of that contract and ( 3)

damages as a result of the breach. *Cohen-Breen v. Gray TV Group, Inc.*, 661 F. Supp. 1158, 1171 (D. Nev. 2009). Plaintiff Ronald McClure entered into an agreement with Fresh Start to provide drug rehabilitation to Jason McClure. Under their agreement, Fresh Start was to provide Jason McClure drug rehabilitation that included counseling, had 24-hour on-site medical personnel, and that did not involve religion. For Fresh Start's services, Ronald McClure was to pay $33,000.00, which he did.

Fresh Start seeks summary judgment on this claim arguing that (a) Plaintiffs have not adduced evidence of a breach; and (b) Plaintiffs cannot show their own performance under the contract. Plaintiffs address these arguments in turn.

### 1.   Plaintiffs have adduced evidence of Fresh Start's breaches.

Plaintiffs have adduced ample evidence that Fresh Start did not hold up its end of the bargain with Plaintiffs by failing to provide counseling, 24-hour on-site medical personnel, and drug rehabilitation that did not involve religion. Fresh Start argues that the parties' written contract required only that Fresh Start provide "residential treatment to clients." Motion at 19 (citing Defendant's Ex. D at FSM 0023). But the document Fresh Start cites is not the parties' written contract, but instead it is a "Special Waiver for Persons Enrolling in the Narconon Program who have taken psychiatric medications or been temporarily hospitalized." Jason McClure signed this waiver at Fresh Start's request once he entered Fresh Start's facility. That document does not even purport to be a written contract between

Ronald McClure and Fresh Start. Indeed, there is no written contract between Ronald McClure and Fresh Start. Instead, the evidence shows an oral contract between Ronald McClure and Fresh Start with Jason McClure as a third-party beneficiary.

**2.     Plaintiff Ronald McClure fully performed under the parties' contract and any non-performance by Jason McClure was excused by Fresh Start's material breaches**.

As set forth above, the contract at issue in this case was between Ronald McClure and Fresh Start. Ronald paid Fresh Start $33,000.00 under that contract. Fresh Start does not dispute this. *See* Motion at 6:18 – 19. By paying the bargained-for-price for Fresh Start's services in full, Ronald fully performed under the contract.

Fresh Start argues, however, that because in their view, *Jason* did not fully perform under the contract, Fresh Start is entitled to summary judgment on this claim. First, this argument fails because Ronald – the party who entered into the contract for Plaintiffs – completely performed. Second, any non-performance by Jason McClure was excused because Fresh Start's failure to provide counseling, 24-hour on-site medical care, and non-religious drug rehabilitation services constituted material breaches. At the very least there is a triable issue of fact as to whether Fresh Start's failure to provide these promised services constituted material breaches. Whether a breach under a contract constitutes a material breaches is a question of fact for the jury. *Nevada First Bancorp v. Highland A.V.A., LLC*, 2010 WL

3291754, at *1 (Nev. July 6, 2010). Where one party to a contract materially breaches the contract, the other party's further performance under the contract is excused. *See Young Elec. Sign Co. v. Fohrman, 86 Nev. 185, 187, 466 P.2d 846, 847 (Nev. 1970)*. Accordingly, if the jury concluded that Fresh Start's breaches were material breaches, Jason's McClure further performance would be excused.

For these reasons, the Court should deny summary judgment as to Plaintiffs' claim for breach of contract.

## H. Nevada Deceptive Trade Practices Claim

To prove a claim under the Nevada Deceptive Trade Practices Act ("DTPA"), a plaintiff must prove "(1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." *Picus v. Wal-Mart Stores, Inc*., 256 F.R.D. 651, 658 (D. Nev. 2009). To recover under the DTPA, a plaintiff must show "a knowing misrepresentation, an intent to mislead, or a false statement of fact." *Phillips v. Dignified Transition Solutions*, No. 2:13-CV-2237-GMN-VCF, 2015 WL 5056406, at *6 (D. Nev. Aug. 25, 2015).

Plaintiffs have adduced ample evidence of Fresh Start's knowing misrepresentations, intent to mislead, and false statements of fact. With respect to Carmichael's representations that Fresh Start's rehab program had 24-hour on-site medical personnel, provided counseling, and was not in any way affiliated with religion, these plainly were false statements of fact, knowing misrepresentations,

and were made with an intent to mislead. At the very least, they create triable issues of fact for the jury.

Plaintiffs bring their DTPA claim under NRS § 598.0915(5) and (9) which make it a deceptive trade practice for a defendant who:

5.      Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith.

9.      Advertises goods or services with intent not to sell or lease them as advertised.

NRS § 598.0915(5),(9). Fresh Start's conduct in falsely representing to Ronald McClure that its drug rehab program provided counseling, had 24-hour on-site medical personnel, and was in no way affiliated with religion falls squarely within the terms of these provisions.

Beyond arguing that Plaintiffs have not identified any false statements of fact, Fresh Start asserts that Plaintiffs' claim under NRS § 598.0915(9) fails because Plaintiffs allege misrepresentations regarding *services*, not property. Fresh Start interprets NRS § 598.0915(9) as inapplicable to advertisements or representations relating to services. Fresh Start cites *Wilson v. Stratosphere Corp.,* 371 F. App'x 810 (9th Cir. 2010) in support of its argument.

Fresh Start's argument is unavailing. First, the plain language of NRS § 598.0915(9) contradicts Fresh Start's interpretations as it expressly applies to advertisements of services:

It is a deceptive trade practice if a defendant:

9.  Advertises goods **or services** with intent not to sell or lease them as advertised.

NRS § 598.0915(9) (emphasis supplied).

Second, the *Wilson* decision did not interpret NRS § 598.0915(9) as applying only to sales of property and not to sales services. 371 F. App'x at 811. Indeed, whether NRS § 598.0915(9) applies to sales of services was not even addressed in the decision.

For all these reasons, the Court should deny Fresh Start's Motion as to Plaintiffs' DTPA claim.

## I. Plaintiffs may recover punitive damages.

By the express terms of Nevada's punitive damages statute, plaintiffs may recover punitive damages for Fresh Start's fraud. Under NRS § 42.005(1), a plaintiff may recover punitive damages where the plaintiff shows "by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." "'Fraud' means an intentional misrepresentation, deception or concealment of a material fact known to the person with the intent to deprive another person of his or her rights or property or to otherwise injure another

person." § 42.001(2). *Kennedy v. Carriage Cemetery Servs., Inc.,* 727 F. Supp. 2d 925, 935 (D. Nev. 2010).

Plaintiffs have adduced ample evidence that Fresh Start made false statements to Ronald McClure as to its drug rehabilitation program. There is, at a minimum, a genuine issue of material fact as to whether to whether Fresh Start committed fraud. The Court should deny Fresh Start's Motion as to Plaintiffs' claim for punitive damages.

## IV.   CONCLUSION

Fresh Start's misrepresentations as to the basic characteristics of its drug rehabilitation program deprived Plaintiff Ronald McClure of the ability to make a fully-informed decision about where to send his son for drug treatment. There are triable issues of fact as to Fresh Start's false representations that its rehab program provides counseling, offers 24-hour on-site medical personnel, and is in no way affiliated with religion. Plaintiffs are entitled to present their case to a jury.

DATED this 2nd day of November, 2015.

Respectfully submitted,

By:  /s/Ryan A. Hamilton

RYAN A. HAMILTON, ESQ.

*Attorney for Plaintiffs*

26

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that on this 2nd day of November, 2015 I filed the foregoing

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY**

**JUDGMENT** via the Court's CM/ECF system, which will send copies to the following:

William Forman
David Williams
SCHEPER KIM & HARRIS, LLP
601 W. 5th Street, Suite 1200
Los Angeles, CA 90071

David Avakian
LEWIS BRISBOIS BISGAARD & SMITH LLP
6385 South Rainbow Boulevard
Las Vegas, NV 89118

By: /s/ Ryan A. Hamilton

27